## NELSON, JUDGE, &c. v. JAQUES & AL.

No administrator is to be considered as refusing or neglecting to account, under oath, for such property of the intestate as he has received, within the meaning of *Stat.* 1786. *ch.* 55. until he has been cited by the Probate Court for that purpose.

Whether an action ought to be brought on an administration-bond, without the express permission of the Judge of Probate, *quære.*

If an administrator, under license for that purpose, sell real estate of the intestate to a certain amount, for payment of debts, and afterwards *refuse to receive* the purchase-money and to execute deeds of the land sold, this is mal-administration; to which, however, his administration-bond, given under *Stat.* 1783. *ch.* 36. [*Revised Statutes ch.* 51. *sec.* 7.] does not extend; but the remedy is by petition to the Judge of Probate for his removal.

*Debt* on a bond, conditioned for the faithful administration of the estate of *Joshua Woodman.* To the general plea of performance, the plaintiff replies that the former administrator on said *Woodman's* estate represented the same as insolvent;—that property to the value of 4000 dollars came to the hands of the

defendant as assets ;—that pursuant to license duly obtained, authorizing him to sell the real estate of said *Woodman* to the amount of one thousand and twenty-five dollars, he did, after giving due notice, on the 15th day of *January* 1817, sell several parcels of real estate at auction to sundry persons, to that amount ;—that the purchasers offered to pay and tendered to the defendant the amount of the purchase-money, and request-ed deeds of the parcels so purchased ;—*which money, so tendered,* the defendant *refused to receive,* and to give deeds of said lands, and to render any account thereof to the Judge of Probate. To this replication the defendant demurred generally, and the plaintiff joined in demurrer.

*Abbot,* in support of the demurrer.

Before a creditor can sustain an action on a Probate bond, he must have the amount of his claim ascertained by a judg-ment of Court, and make a demand thereof on the administra-tor ; or, if the estate be represented insolvent, he must produce a copy of the order of distribution, and shew a demand of his particular dividend, unless the administrator has neglected, for more than six months after the commissioners have made their report to the Judge of Probate, to render his account.—But the replication in this case neither alleges that the claim of the creditor, for whose benefit the suit is brought, has been ascer-tained by a judgment, nor that it has been allowed by commis-sioners ; and it is therefore insufficient.

But waiving, for argument's sake, this objection, and admitting that the land was actually sold, and the money paid to the ad-ministrator, yet he is not liable upon the general administration-bond for the proceeds of such property, the faithful administra-tion of *this* fund being secured by another bond specially given on the taking of license to sell the land. This question is con-sidered as settled in favour of the defendant by the cases of *Henshaw v. Blood,* 1 *Mass.* 35. and *Freeman v. Anderson,* 11 *Mass.* 190.

*Orr* and *Hale,* for the plaintiff.

Real estate, in the hands of the administrator of an insolvent estate, after it is struck off at auction, is, by a fair construction of the statute, to be regarded as assets.

Nelson, Judge, &c. v. Jaques.

It will not be denied, that after real estate is sold and conveyed, and the commissioners have returned a schedule of debts to the Judge of Probate, the proceeds of the real and personal estate, of which he is about to decree a distribution, form in fact but *one fund.* The whole becomes assets upon the settlement of the administrator's account, at farthest; and an action lies upon the bond, for the dividend decreed by the Judge.

It is then for the defendent to show wherein this case differs, in principle, from the case where the money has been received and admitted in the administrator's account.

By the *Stat.* 1784. *ch.* 2. it is made the duty of the Judge to order the residue of the estate of an insolvent, both real and personal, to be distributed among the creditors. Such decree is a sequestration of the estate for that purpose. It is not for the defendant to object that in this case no such decree has been made, after having actually sold the estate, and neglected to account for the proceeds. The tender of the purchase-money is so far payment, as to render him liable for the amount tendered; and his refusal is bad faith towards the purchaser, and a fraud on the creditors. The decree being thus prevented by his own wrong, he is not to be suffered to profit by it.

Nor can the objection be maintained, that the proceeds of the sales of real estate are secured by another bond, under *Stat.* 1783. *ch.* 32.; for no bond is necessary, by that statute, except where license is obtained to sell the *whole* real estate, when by a partial sale the residue would be injured; and it is required only for the security of the *surplus* in the hands of the administrator after payment of the debts. The reason why the legislature required no bond upon license to sell only enough for payment of debts, was because the administration-bond, originally given, was considered as extending to all transactions of the administrator, except to such surplus proceeds of real estate as might be remaining in his hands.

MELLEN C. J. delivered the opinion of the Court as follows.

The question is, whether the replication contains a sufficient assignment of any breach of the condition of the bond. The facts disclosed in the replication, all which are admitted by the demurrer, present a case in some degree uncommon,

and authorize us to draw conclusions much to the disadvantage of the administrator. For we can perceive no good reason nor apology for his nonacceptance of the purchase-money which was tendered to him, nor for his refusal to execute deeds of the land he had sold. His conduct seems to exhibit him as purposely and unfairly delaying the settlement of the estate, with a view to withhold and enjoy the property, at the expense of the creditors. But our inquiry, at present, is not so much into his motives of action, as into the propriety of the remedy pursued against him.

The counsel for the defendants has contended that the administrator was under no legal obligation to inventory the *real* estate of *Woodman*, according to the condition of the bond ; nor in any manner to account for it; and has cited the cases of *Freeman v. Anderson* and *Henshaw v. Blood.* In the former of these cases the question was, whether the administrator had subjected himself to the forfeiture of the penalty of his bond, by *neglecting to procure license to sell the real estate* of the deceased for payment of his debts ; and the Court decided that he had not. That case was different from this ; yet the Court proceeded upon the principle that the administration-bond had no relation to the *real estate* of the deceased. In the latter case the question was, whether by the condition of the bond, the administrator was bound to *inventory the real estate ;* and they decided that he was not. Chief Justice *Dana*, in giving his opinion, stated that a case had been decided in *Middlesex*, in which an administrator had sold the real estate of the intestate, and *actually received the money ;* yet the Court held that the administrator was not holden, *on his bond*, to account for it.

Without making any observation, at present, upon this last opinion, it may be remarked that the case at bar presents a different question ; because the purchase-money has not been received by *Jaques* the administrator.

The counsel for the plaintiff does not deny the principle of law, that the condition of an administration-bond does not extend to real estate ; but he contends that after the administrator has sold it by proper authority, and *received its value*, this sum becomes assets in his hands, for which he is responsible on his bond. But here again we are met by the fact stated by the

plaintiff himself, that *Jaques has never received* the price of the lands sold, nor any part of it. Admitting his principle to be correct, the facts do not bring his case within its operation.

But the counsel has further urged that the administrator is as much answerable on his bond for the purchase-money which he *refused* to receive, as if he had actually *received* it; because no man shall be permitted to take advantage of his own wrong. It is true, generally speaking, that a tender and refusal of a sum of money, give to him who made the tender the same rights and advantages which he would acquire by actual payment; but these rights and advantages belong to him *only*;— third persons cannot avail themselves of them. Should any one of the purchasers bring his action against *Jaques* for not executing and delivering to him a deed of the lands he purchased, a tender of the price of the land and a refusal would avail him as much as payment, in maintaining his action. As it is admitted that the penalty of an administration-bond is not forfeited by his neglecting or refusing to procure a license to sell the estate; why should it be, by his neglecting or refusing to give deeds after he has sold? In both cases the estate remains as it was;—the fee has not been transferred;—no rights have been changed;—the prejudice to creditors is as great in the one case as in the other;—and improper motives may operate in both to produce the delay.

But is there no remedy in such case? Shall an administrator, by refusing to complete the sale of the real estate, delay and defraud the creditors with impunity,—his sureties not being liable on the bond, and he destitute of property? The answer to these questions as given by the Chief Justice in pronouncing the opinion of the Court in *Wildrage v. Patterson*, 15 *Mass.* 148. " Admit that the administration-bond, furnishes " none, and that an action of waste would be fruitless, still there " is no defect of remedy; for on a representation of a refusal to " administer such estate, and satisfactory proof thereof to " the Judge of Probate, he has the authority, and would be " bound to execute it, to remove such administrator and ap- " point another, even one of the creditors, whose interest as " well as duty it would be to do justice in this respect."

But if it were true that no remedy existed in the case, it

might prove the necessity of legislative interference, but would not authorize us to sustain an action, unless upon legal principles.

If, however, we adopt the principle advanced, and consider the purchase-money, as, in legal contemplation, received by the administrator ; another question arises as to the plaintiff's right to maintain this action.  We presume that the decision of the Court, in the case of *Middlesex* before mentioned, was founded not only upon the language in the condition of the bond, which language relates exclusively to personal estate ; but also on the *intention* of the law, and of the parties to the bond ; that is, that the fidelity of the administrator in collecting or appropriating the personal estate of the deceased, according to law, was all which the obligors undertook to insure, or were considered as insuring.   This construction seems to be supported by the circumstance that previous to the sale of lands by an administrator, under license of Court to sell the *whole*, where the sale of a part would be prejudicial, he is required to give a *new bond* to account for and legally apply the proceeds of such sale ; and also by the *usage* which has prevailed, to require such bond in *all* cases.   By this it would seem that the bond of administration was not contemplated as furnishing any security as to the *proceeds of the sale of real estate*, any more than as to its *inventory* or *disposal*.

In aid of this construction it is worthy of particular observation that the *Stat.* 1817. *ch.* 190, relating to Probate Courts, contains a new form of a bond of administration, which provides expressly for the inventory of *real* estate, as well as personal ; and binds the administrator or executor and their sureties for the faithful administration of *all* the estate of the deceased.   In all cases it is the duty of the Court, in the construction of a contract, to ascertain the meaning and intention of the parties, and give it effect as far as is consistent with legal principles.

But there is another view of the cause which presents, to our minds, a fatal objection to the action.   The suit is brought for the benefit of a creditor, who has proved his claim before commissioners, the estate having been represented insolvent.   No decree of distribution has ever been passed.   If there had been, the dividend of this creditor must have been demanded

Nelson, Judge, &c. v. Jaques.

of the administrator before commencement of the action. The plaintiff then attempts to support the action on the ground that the administrator has refused or neglected to account upon oath for the property he has received, belonging to the intestate. By *Stat.* 1786. *c.* 55. regulating the proceedings in suits on Probate-bonds, it is provided that " when the administrator shall " refuse or neglect to account, upon oath, for such property of " the intestate as he has received, *especially if he has been cited* " *by the Probate Court for that purpose,* execution shall be award-" ed against him for the full value of the personal property of " the deceased that has come to his hands, without any dis-" count, abatement, or allowance for charges and expenses of " administration, or *debts paid.*" This provision is highly penal, and, according to the settled rule, should receive a strict construction ; and no man should be considered as liable to its severity, unless he *has been cited by the Probate Court* to account, upon oath ; and until then, he should not be deemed to have *refused* or *neglected,* within the true intent and meaning of the Statute. Unless this construction be given, every executor and administrator may be exposed, not only to unreasonable expense, but to heavy, and in some instances immense losses. According to the known mode of conducting the settlement of an estate, the executor or administrator usually settles several successive accounts on oath in the Probate office ; and this is done because property is coming into his hands and possession continually, by collection of debts or otherwise ; and it may be frequently necessary also to settle an account, for the purpose of obtaining license to sell all or a part of the real estate ; in which case another account must be rendered, on oath, after the sale shall have been made. But if the doctrine contended for by the counsel for the plaintiff be correct, then it follows that if any property shall come to the hands and possession of the executor or administrator, as by the sale of land, or the receipt of a debt, he is at once liable, without any notice, to a suit on his administration-bond, because he had not accounted on oath for the amount thus collected ; and this although he had no intention to misappropriate any portion of the estate ;— execution, moreover, is to issue against him for the whole amount of the personal property which has come to his hands,

and he must actually lose all the debts which he has paid. Can such be the law? We think not.

It may be urged that no action of the kind just mentioned will lie on the administration-bond, unless the administrator has *unreasonably* refused or neglected to account on oath for the property received; and that the circumstances of each case must be examined, to ascertain whether the delay or refusal was unreasonable or not. We admit that the refusal or neglect must be *unreasonable*, to authorize such suit; but we apprehend that this is a fact more immediately within the province of the Judge of Probate, who must know the situation of the estate; and that the statute has therefore wisely provided that he should originate the inquiry as to the reason of his neglect or refusal, and by his *citation* summon the administrator before him to perform his duty. If the administrator disobey this citation, or can give no satisfactory explanations, and render no account, then the Judge may authorize a suit on the bond. There is no statute expressly requiring such permission of the Judge of Probate; though a Probate-bond given in the Supreme Court of Probate cannot be put in suit without permission of the Court. But there appears to be the same reason in both cases. Some Judges of Probate do require it; and it is desirable, in all cases, that such permission be obtained.

We have thus far endeavoured to support this construction of the statute by arguments drawn from its reasonableness and expediency, and its tendency to preserve distinct the respective powers and jurisdiction of the Probate Courts and Courts of Common law. But some cases have also been decided in *Massachusetts*, which recognize the same doctrine and mode of proceeding. In the case of the *Selectmen of Boston v. Boylston*, 4 *Mass*. 318. the powers of Probate Courts as to disputed questions, and the propriety of exercising those powers, were considered. *Boylston*, the administrator, had been cited by the Judge of Probate to account, on oath, for certain property, and had refused. Judge *Jackson*, then of counsel for *Boylston*, observed in argument, and the reasoning seems to be sanctioned by the Court, that " all the Probate Court can do, is to cite the " party to render an inventory or account. If he comes in vol- " untarily, and renders a satisfactory inventory or account, it

Nelson, Judge &c. *v*. Jaques.

" is well ;—but if he will not come in, or, having come in, will " not satisfy the Probate Court, the jurisdiction of this latter " is at an end. It will record his neglect or refusal, and furnish " the injured party with the means to pursue him on his bond." The Court, it is true, do not say their jurisdiction is at an end when an account is exhibited by the administrator ; but they may then proceed to require an allowance of assets not inventoried or credited ; and in this one point they do not sanction the arguments of the counsel ; but when no account is rendered, they admit the law to be as stated in the argument. In that case the Court refused to proceed, and authorized a suit on the administration-bond, the administrator having been already cited as before mentioned. In 11 *Mass.* 337. we find the action *Dawes*, Judge, &c. *v. Boylston*, on the administration-bond, in which there is the general plea of performance. The replication alleges monies received by the defendant, as executor of the will of *Moses Gill*, and not administered,—" and that the defendant had not exhibited any account thereof *although thereunto cited.*" Chief Justice *Sewall*, in the close of a long and able argument observes,—" Upon the whole, the defendant's " refusal to acknowledge assets in his hands as administrator, " and to account for the effects received and collected upon the " judgment recovered by him against the executor of the last " will of *Moses Gill* deceased, *confessed by the pleadings*, is a for- " feiture of the bond declared on." Here, the same pleadings by which the receipt of the money was acknowledged, shewed that the defendant had been *duly cited* to render an account, and had refused. In both cases the citation to *Boylston*, and his *refusal* thereupon to account, were the foundation of the proceedings.

Upon this view of the cause before us, considered in all its relations, we are of opinion that upon legal principles it cannot be maintained, and that the

*Replication is insufficient.*